# Third District Court of Appeal

## State of Florida

Opinion filed October 10, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-2811
Lower Tribunal No. 17-8351
_____

**People's Trust Insurance Company,**
Appellant,

vs.

**Guillermo Acosta and Laura E. Pirela,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Rodolfo A. Ruiz, Judge.

White & Case and Raoul G. Cantero, III and Ryan A. Ulloa; Jonathan Sabghir and Brett R. Frankel (Deerfield Beach), for appellant.

Mintz Truppman, P.A., and Timothy H. Crutchfield and Adrian Neiman Arkin, for appellees.

Before ROTHENBERG, C.J., and SALTER, and LOGUE, JJ.

SALTER, J.

People's Trust Insurance Company ("Insurer") appeals from a non-final order denying its motion for a temporary injunction compelling the defendants below, appellees here (the "Insureds"), to execute a work authorization and submit to an appraisal of their residential water damage claim. We affirm.

Claim, Policy Provision, and Lawsuit

In October 2016, the Insureds reported a claim arising out of water damage in their home. The Insurer inspected the property and notified that it was exercising its contractual right under the homeowner's policy ("Policy") to repair the damage. The pertinent Policy provision specified:

> If a peril causing a loss and related damage are covered (other than sinkhole loss) and repairs are necessary to protect covered property from further damage, [the Insureds] must notify [the Insurer] before authorizing or commencing repairs so [the Insurer], at [its] option, may select Rapid Response Team, LLC™ to make the covered Reasonable Repairs.
> . . .
> If [the Insureds] and [the Insurer] fail to agree on the amount of loss, which includes the scope of repairs, either may demand an appraisal as to the amount of loss and the scope of repairs.
> . . .
> The scope of repairs shall establish the work to be performed and completed by Rapid Response Team, LLC™. Such repair is in lieu of issuing any loss payment to [the Insureds] that otherwise would be due under the policy.

The Policy also required the Insureds to "execute all work authorizations to allow contractors and related parties entry to the property."

After notifying the Insureds that the Insurer was exercising its contractual right to repair, the Insurer provided the Insureds a written proposal for the scope of repairs.

Through their designated public adjuster and claims agent, the Insureds disputed the "scope, pricing and methodology of [the Insurer's] proposed repair," and advised the Insurer that appraisal was "not possible due to lack of financial resources." Thereafter, the Insureds decided to execute a work authorization form, though making certain additional "minor" requests, to allow the Insurer to proceed with the repairs.

These requests, itemized by the public adjuster, included: (1) a request for payment of 20% of the amounts payable by the Insurer's designated repair contractor, or inclusion as a co-payee on any drafts payable to that contractor; (2) designation of the Insureds' mortgage lender as a co-payee on any such payments; (3) evidence that the repair contractor has a "payment and performance bond from a Class A surety" with an additional obligee rider in favor of the mortgage lender; and (4) consent by the contractor to allow a film crew hired by the public adjuster "to video the entire repair process."

The Insurer's counsel promptly responded to the public adjuster's requests with: (1) a refusal to pay the public adjuster, or add the adjuster as a

3

co-payee on any check paid to the Insurer's designated repair contractor, inasmuch as the Policy contained no such requirement; (2) a refusal to add the Insureds' mortgage lender as a co-payee on any payment to the contractor, for the same reason; (3) an offer to allow the Insureds to inspect the contractor's bond at a meeting intended to commence the repair work, though declining to provide any obligee rider (as the public adjuster had no authority from the lender to request such a rider); and (4) an assent to allow filming so long as the process complied with applicable law and would not interfere with the repair process.

The following day, the Insurer issued a reservation of rights letter to the Insureds based on their failure to provide a signed work authorization to the contractor to commence repairs and "because there is a question as to whether coverage applies to this loss," based on the Insureds' non-compliance with their post-loss obligations under the Policy. The Insureds provided a marked-up, signed version of the Insurer's form of work authorization with material alterations to the Insurer's form.

Some ten days later, the Insurer filed its complaint for (1) temporary injunctive relief or, alternatively, specific performance of the Policy terms for repair by the Insurer's contractor, (2) declaratory relief regarding the Policy terms, and (3) an action for "anticipatory breach and repudiation of

4

the election-to-repair" terms within the Policy. The Insureds opposed the motion for a temporary mandatory injunction, and the trial court denied the motion.[1] This appeal from that non-final order followed.

Analysis

The trial court's denial of the motion for an injunction was based on a review of the pleadings and the court's determination that the Insurer had failed to plead irreparable harm. The court did not conduct an evidentiary hearing, concluding that the pleadings established the existence of the Insurer's adequate remedies at law. Our review is thus de novo. Telemundo Media, LLC v. Mintz, 194 So. 3d 434, 435 (Fla. 3d DCA 2016).

Irreparable harm and the unavailability of an adequate remedy are essential elements of action for a temporary injunction; the absence of these elements (or any of the other required elements) requires that the motion be denied. Genchi v. Lower Fla. Keys Hosp. Dist., 45 So. 3d 915, 919 (Fla. 3d DCA 2010).

The Insurer contends that irreparable harm in such a case has been established in this Court's decisions in Hernandez v. Florida Peninsula

[1] The order of denial was without prejudice, as the parties planned to consolidate the Insurer's lawsuit with a second lawsuit brought by the Insureds. The Policy also provides that a dispute over the scope of work to be performed under the election-to-repair would be resolved by appraisal. As the enforcement of this clause was not raised below, we do not address it here.

Insurance Co., 211 So. 3d 1126 (Fla. 3d DCA 2017), and Fernandez-Andrew v. Florida Peninsula Insurance Co., 208 So. 3d 835 (Fla. 3d DCA 2017). We join the trial court in disagreeing with that contention.

In each of those cases, the insureds filed a lawsuit against their insurer for declaratory relief and breach of contract. The insureds' homeowners' policies contained election-to-repair clauses similar to those at issue here. There, as here, the insureds did not sign the work authorization forms proffered by the insurer's designated contractor. In each case, the insurer moved to abate the lawsuit unless and until the insureds complied with the election-to-repair requirements. The insurer agreed that the action could proceed after the insurer's designated contractor completed the required repairs.[2] The trial court agreed with the insurer in each case and entered an order of abatement. The insureds sought certiorari in this Court to quash the orders.

In Hernandez and Fernandez-Andrew, the insureds argued that abatement was tantamount to the dismissal of their actions for declaratory relief and breach of contract damages. This Court denied the petitions, concluding that the insureds had failed to show irreparable harm and the

---

[2]   In Hernandez, for example, the insurer "acknowledged that if the [insureds] believe that 'the property isn't put back into to its pre-loss condition,' the [insureds] would then have a 'proper cause of action' against [the insurer]." 211 So. 3d at 1128.

absence of an adequate remedy at law in each case. Those cases did not approve temporary injunctions against the insureds to enforce the election-to-repair provisions.

The Insurer in the present case also argued that the trial court was denying the Insurer a critical form of relief that it had specifically bargained for in the Policy.[3] We disagree, concluding that the availability of abatement, declaratory relief, and money damages after the completion of repairs (should the repairs prove insufficient or defective) adequately protect the Insurer.

Affirmed.

---

[3] The election-to-repair provision is contained in an endorsement, and the Insureds obtained a premium discount for accepting the endorsement.